at Save the United States in this Honorable Court. Good afternoon, Ms. Cabana and Mr. Durant. I'm Judge Dennis. I'm sitting with Judge Elrod and Judge Duncan. We'll be your panel this afternoon. So without further ado, we'll begin. Ms. Cabana, Banda, you may begin. Thank you, and may it please the court. Rachel Cubanda on behalf of the petitioner. Your honors, we are here today because the petitioner, Mr. Josue Cardona-Franco, seeks this court's review of a final decision issued by the Board of Immigration Appeals entered on September 20th, 2019. In this decision, the board dismissed petitioner's appeal from a March 22nd, 2019 decision of an immigration judge denying his applications for asylum and withholding of removal. On October 22nd, 2019, petitioner timely filed his petition for review with this court, which is now the subject of this appeal. And for clarity, I will be referring to the Board of Immigration Appeals as either the board or BIA. Briefly, your honors, if I may address the background facts. On November 7th, 2015, Mr. Cardona entered the United States with his twin brother from El Salvador as a minor. He was 17 years old. Mr. Cardona is an El Salvador native and his parents are pastors of a small church in San Salvador called Prince of Peace. Mr. Cardona identifies as an evangelical Christian. During the months before he came to the United States, Mr. Cardona and his twin brother Samuel endured repeated beatings as well as death threats from gang members who were part of Barrio 18 and MS 13 on account of his religious beliefs. And to just highlight those, there are five specific instances that the petitioner identifies. One of them was a beating at school due to his religious beliefs on April 17th, 2015. Another was on June 16th, 2015. He received death threats from classmates who had orders to kill him. On June 23rd, 2015, he and his brother received a beating on the bus and again was threatened for his religious practice. They said, let's see if you keep preaching Christians. On July 18th, 2015, he received death threats with guns outside of his church. And ultimately on August 19th, 2015, he received an ultimatum that he had to join the gang or would be killed. Due to these events, he and his brother felt that they had no choice but to leave El Salvador. Upon entering the United States, Mr. Cardona and his brother were eventually connected to a pro bono organization called KIND, Kids in Need of Defense, in which they were connected with legal counsel. They completed and submitted nearly identical applications for asylum. Petitioner's application was denied and an immigration judge assumed jurisdiction over his application. On March 22nd, 2019, and after hearing on the petitioner's asylum application, the immigration judge entered its decision. On October 22nd, 2019, petitioner filed a petition for review with this court. Your honors, multiple errors in this case justify reversal and remand from the Board of Immigration for further consideration. To begin, the board erred in refusing to take administrative notice of the agency decision that had granted asylum to his twin brother, Samuel. The board is entitled to take judicial review of official documents issued by other courts and by itself. Administrative notice, which is official notice taken by administrative agencies, is very similar to judicial notice, but is broader in scope. The board has authority to take administrative notice from Title VIII CFR Section 1003.1, subsections D39, Romanet 4. These are the federal regulations that lay out the, quote, organization, jurisdiction, and powers of the Board of Immigration Appeals. This specific section provides that the board may take administrative notice of commonly known facts, such as, and it cites as number two, the contents of official documents outside of the record. Courts have held that the scope of notice is broader in administrative proceedings than in trials, and that is from Castillo-Viagra v. INS 972 F2D 1017, 9th Circuit, 1996. Counsel, I'm a little bit confused by this point. It was already sent to the BIA. It's already in our record. What is it, what, what happened, what's the situation with the judicial notice or administer, are you seeking us to make the BIA pay more attention? I don't understand what relief you seek vis-a-vis this, this claim. Yes, Justice, we are asking for the BIA to take administrative notice. The fact that these twin brothers' applications were essentially identical, relaying the same events, and supporting evidence is determinative and can help the petitioner in, in his credibility. But the BIA already has that, so it's noticing it, it just may not be doing something with it, right? Well, we, we are asking this court to remand back to the BIA for further proceedings. We did not learn of the order until after our appeal to the BIA and after the, the merits hearings before. So was it not already sent to the BIA? I thought it was already sent to the BIA. So I don't understand that we need to tell them to read things they already have. Maybe it wasn't already sent, but that's what I thought. We had filed a motion to remand with the BIA and that was dismissed. And so because we cannot get in new evidence, we are just asking the court to take judicial notice of the fact that this agency decision exists and that the brothers, the facts are replete with facts that the brothers both face the same abuse and violence in El Salvador. But we don't have to take judicial notice of things that are already in the, that were already part of the record because they were with the BIA. It was already sent to the BIA. So I'm happy to consider it, but I don't think we need to take any formal notice of it. Okay. I mean, Ms. Cabanda, do you agree with Judge Elrod? What she's saying is that the fact that the brother got asylum was before the BIA knew about that. Is that correct? The BIA, the panel that we were in front of from the BIA was not aware of that until we filed our motion to remand asking for them to consider new evidence. You filed your motion to remand with the BIA though, right? That's right. So then at that point, the BIA became aware of it and could choose to remand to the IJ or not, right? Correct. And they did not find that that was probative. Well, didn't they, did the BIA, correct me if I'm wrong, the procedure is a little complicated. Did they find that the motion was not timely? That's right. And we filed a motion to reconsider, which was also denied. So we proceeded with this petition for review and because the agency decision. I get that. So are we reviewing the BIA's denial of a motion to reconsider the untimely motion to remand? Is that what we're doing? Because like Judge Elrod, I didn't really understand how we were being asked to deal with the brother's asylum. Like what was the procedural posture? We want this court to take into consideration the brother's asylum grant that allows him to stay in the United States. We think that is massively helpful for the petitioner's case. And that was not part of the record. And we're not asking this court to consider the motion to remand, but we are asking this court to take into consideration the agency decision and to also instruct on remand the BIA to also, likewise, taking as administrative notice the asylum decision for his brother. Well, we have to have a decision to something to remand. Some determination. If you're wanting us to remand to the BIA, which is what I think you want, right? You don't want us to determine that he's entitled to asylum. We can't do that. You want us to remand to the BIA for them to look at this again. What is the vehicle that you want us to remand? What is it a motion for reconsideration? Is it a motion to reopen? Is it a denial of what is the document that we are reviewing here as the appellate court to be remanded? We are looking at the final decision issued by the Board of Immigration that was entered on September 20th, 2019. And we want this court to vacate that decision and remand these proceedings back to the Board of Immigration so that we can essentially have these issues reheard by the Board of Immigration. Right. But you did, you, you, correct me if I'm wrong. You filed a motion to reconsider with the BIA because the BIA said, no, we're not going to do that, right? We're not going to remand. And the BIA said, the reason we're not going to remand is that your motion was untimely, right? That's right. And it was untimely because we didn't pay. We didn't know we had to pay a fee. It was so it was physically was rejected. I get that. But when, when a lower, when an agency that we're reviewing says, look, we're not going to do it for these reasons, then we have to, as you know, we have to say, well, that you abused your discretion. You know, you, you made a legal error. Like what Judge Elrod is saying is, I think is, well, on what basis do you want us to do that? I mean, we, we have to have a, you know, an error to correct, right? It's an abuse of discretion, Your Honor. In what way? Because it wasn't part of the record. And so we need the court to consider this critical piece, this critical document that could assist the petitioner in his case. Okay. All right. So that's your, that's the argument with respect to the brothers asylum. Did you, you have some other points. You don't have much time left, but you certainly have some other points if you want to talk about those. Yes, Your Honor. Can I ask you real quick? I'm so sorry. The final decision in 2019, that's the motion denying the motion to reconsider. Because I'm not sure we have jurisdiction to review a motion to reconsider. Maybe we do. I was going to ask Mr. Durant that as well. Because whether we, we don't have jurisdiction on some discretionary determinations, even to review them. So do you have any comment on that? Your Honor, I, I think we, we tried to bring up the issue. It was denied. The motion to reconsider is not before you, but we are asking that the, the final decision entered by the board of immigration, which doesn't, I believe, address the asylum grant to the brother. These proceedings need to be remanded back to them so that they can take that into consideration. As it's not part of the record. Your Honor, the main reason you seek them to remand is that the district, that the, the IJ made credibility determinations that were wrong. Yes, Your Honor, the, the board erred in the petitioner's due process rights, acting as an impartial and neutral arbiter on petitioner's claim. And for example, the, the immigration judge committed clear error by relying on irrelevant facts and evidence that do not exist in the record at all. The BIA improperly asked the respondent to state how many books were in the Bible and to name the first five books of the Bible. And these facts are irrelevant and no reasonable adjudicator should rely upon this types of trivia questions. I read your brief and I thought it was, I thought it was well-stated. I have to tell you, and it was a little unusual to read about a question like that. But, and I'll certainly want to hear from the government about it, but, the, the, the IJ has to determine credibility. Part of the credibility was I'm a preacher, I'm an evangelist, right? Now the IJ, I think has to probe whether the, the, the petitioner is being truthful. So it sounds odd and I'll grant you that. But isn't it plausible that the IJ said, okay, well, you say that you're an evangelist, but I don't believe your story. So I've got to probe it. Is that not, is that not within bounds for an IJ to do? Your honor, it's not proper for the immigration judge to assess Mr. Cardona's religious beliefs and commitments based on his knowledge or lack thereof of the first five books of the Bible. There's a case called Ting Ting Ye versus Sessions 695 F Apex 785, which is a fifth circuit case from 2017. And in that case, an immigration judge questioned the petitioner's religious commitment because she couldn't recall specific details of her baptism. And she had only been connected with that religious group for six weeks. And how, if that was such a significant transformative part of her personal life, why could she not recall specific details? And, and the fifth circuit held that these types of judgments are wholly unsupported by the evidence and involve speculation, wholly outside the proper purview of the immigration judge. And so in the same regard here, Is that case cited in your brief? It is not, no, your honor. Okay. Ting Ting Ye versus Sessions. Okay. Well, I'm interested on that panel, wasn't I? I believe you were, but, but you need to, did you provide that to Mr. Durant? I'm, I'm not sure if I cited it in my brief. Well, that's not, you can't. Okay. Well, that's up to judge Dennis, but I would encourage you that you be forthcoming with opposing counsel about any cases you intend to rely on. Yes, your honor. Apologies. Um, I just wanted to add that. I thought that case was helpful only because the, you know, the court basically found that and, uh, these are very interesting. May I finish? You're out of time. Okay. Thank you. We'll have five minutes on rebuttal. Thank you. Good evening, Edward Durant for the United States. Substantial evidence supports the agency's adverse credibility determination. This case relies on credibility, the merits of petitioner's asylum application, whether or not he was persecuted or not, or whether or not he's entitled to asylum. The board did not make that determination. So the only thing they rested the decision on is credibility. And the immigration judge gave several salient reasons for not believing petitioner. And then, and again, now he can rely on anything he wants, anything. It doesn't have to have anything to do with the persecution either. The first thing that the judge talked about was Mr. Cardona's arrest in the United States for brandishing a weapon. The judge gave several reasons why he didn't believe petitioner. First is that he said he was non-responsive. Well, that's true. He asked him, why did you have a toy gun? And there was no response. He was also inconsistent in several regards. He was asked point blank, you know, why, why were you arrested? He said, I don't know. And then he admitted people accused them. And this is all in respondent's brief. These people accused him of waving a gun at them. And then he was asked, did you wave a gun? And he said, no. And then later he says, oh yeah, I may have helped, you know, brought it up and held it that and then showed it to them. His answers in addition were nonsensical. The judge was asking him about why he was arrested for brandishing what was a BB gun. And he's talking about getting tacos. And that would give this other nonsensical reason that he found it in a garbage can and then put it under his car because that's where he put his other toys. Was he having trouble understanding what was going on? There's no indication in the record or in petitioner's brief that I'm aware of that he did not understand his interpreter. And in fact, the judge and the petitioner makes a due process argument in her brief. But the immigration judge was always asking petitioner if he understood the interpreter. And that's also in respondent's brief. So again, yes, ma'am. OK, so there's so you believe that there are these incorrect statements, these nonsensical statements made, you know, the judge also gave a number of other points, though, some of which may not be appropriate. And we just had a case and I'm trying to think our court just had a case where there were five or six reasons and three or four of them were not appropriate. I think it's saying your honor. Thank you. So once it gets to a certain amount that are not appropriate, we have to send it back to remand to see if that makes a decision. Why isn't that the situation here? Well, I will argue that that that that these findings were strong. Now, the judge did the judge did say he was reminded that it was a BB gun. That is not true. But in that net and that finding, we gave four or five reasons why he didn't believe petitioner and what petitioner is in the entire time. And and there is case law here that there's no reasonable possibility that the agency would would find him credible. But for any errors that the court sees, you know, and the you know, the smoking gun in the room is petitioner's letter. Petitioner said he was beaten. He gave specific details. He was beaten on 17 April 2015. I believe that was the date he knew. He knew that he knew the time, the date, what happened to him. He and his brother were really pounded. And then he files a police report. Not only does the police report not mention the beating. And this is why they went. It gives a different reason why they were attacked. Petitioner said it was due to his being an evangelizing. And the police report is says it was because they were from a different neighborhood. Had nothing to do with the fact that that with the heart of his asylum claim that he is being persecuted because he's evangelizing. In addition, the letter from his father who wrote his letter knowing that his son was beating at all and he never mentions the religious animus. And it's it's. How do you how does petitioner sustain that? How can how can he claim that he's credible on those facts? In addition, the immigration judge found the petitioner was able to give specific details about every attack that allegedly happened in El Salvador. He knew dates. He often knew times. He knew the number. He knew when it happened. Six incidents, including his father, who was allegedly harassed after he left. But juxtapose it to that to when the judge asked him a simple question. When did you go to Liberty High School? He couldn't even give an answer. Couldn't even give an answer. It's implausible given his laser like testimony on this other stuff. So it leads a fact finder to believe that this story is made up or simply rehearsed. In addition, he didn't know when his sister Clara came over, even though he knew all these other dates about himself. And his he said that she came over in 2015 after a event in 2015, August of 2015. His sister Carla, who spoke after him, said she believes she came over in 2014. So if Clara came here in 2014, petitioner's testimony regarding one of those events is a total fabrication. And when you get to Carla, his sister, she can't explain why why her father's letter is doesn't have all these details. And she allegedly has these three letters that they received. Yet she forgot to bring it. She forgot to bring these letters to the court. It's just not plausible. And so the even if if the adverse credibility determination wasn't perfect, it doesn't mean that this court is compelled to reverse. And certainly there's no there's no reasonable possibility that he would be found credible if the court sent it back. Now, with respect to petitioners due process arguments respecting the judge, the judge was fair. I outlined this in our brief. He gave him breaks. He let him. It Yes, ma'am. Is there someone wants to ask a question? I may have been clearing my throat. I'm sorry. I'm very good. I'm sorry, your honor. I let me let me just if I can get you to go to another subject that we talked about with What is your view of how what sort of the vehicle that that issue is presented to us in this petition? Because I'm a little unclear on what we're supposed to decide with respect to that. I mean, the petitioner says this is very important evidence. And we're being asked to do something with respect to what's the government's view of how that issue is presented to us? And how do you think we should resolve it? Well, first of all, I can tell you the procedural history, your honor, but I would say it's irrelevant. These are not he's not derivative of his brother. These two asylum applications stand on their own. And the government cited case law supporting that proposition. And I don't know what was said in petitioner's brother's case. I don't know the level of scrutiny he received. The petitioner keeps saying that it's identical. But the only thing we have is a piece of paper that goes to the merits of it. How is it before us? What are we being asked to do in the government's view with respect to this brother's asylum determination? It's government's understanding that, well, first, the petitioner submitted it on appeal after the first decision. And the board said, listen, we're an administrative. I mean, we're an appellate body. And you didn't tell us why you couldn't get it. And three, I don't think it would make a difference. I think that's what they said. Then they made a motion to reconsider. And it was untimely. The court said, and you haven't shown an error in law in fact because the motion to reconsider doesn't address the adverse credibility determination at all. And then the court said it wouldn't make a difference in any event because it really has nothing to do with the adverse credibility determination. Who cares if he got his asylum application? Perhaps he received less scrutiny but has nothing to do with all the rampant errors in petitioner's case. Now, Judge Elrod also asked about, and I'm asking her questions for her. I'm sorry. I just I was interested in the answer. If we're being asked to review the denial of a motion to reconsider on this point, do we have jurisdiction? In our brief, I said, I believe the court has jurisdiction under like you review it for abuse of discretion. And what I found in this, that's the case laws. The court has jurisdiction to review a motion to reconsider for an abuse of discretion, whether or not the agency acted outside it's considerable discretion. And it gave three reasons. Assuming the court thinks it has jurisdiction, the court, the board gave three reasonable reasons why it denied the motion. First, it was late. Second, it didn't specify an error in law in fact of any relevance because it didn't address the credibility determination. And finally, in the court said it wouldn't make any difference. They cite Coho. So they get three reasons, very persuasive ones. OK, I get it. So the government's position, I think, maybe not definitively, but appears to be that we review that for abuse. We review those reasons for abuse of discretion. Based on a denial of a motion to reconsider is denied for abuse of discretion based on the research that I did. Now, so so I've already talked about due process, how it was it was fair. He never eliminated his testimony. In fact, he let him say everything he wanted. He didn't cut out any of the evidence he wanted to submit. In fact, petitioner was able to submit even a baptismal certificate after the fact. The judge may have arguably been stern, but certainly wasn't unfair and no bias there. So the due process arguments are nothing more than red hair. So, you know, the judge was more than willing. I mean, moved around when petitioner's sister could testify. She was having a baby. He let petitioner's expert testify via Zoom or telephonically. You know, he even accepted a document late. And, you know, what the court could note is to date, we don't have these alleged letters from that threatening letters that petitioner's sister talked about. And one thing is we don't have any report card from Liberty High School where he said he went. I mean, he got all this other evidence. And it's just it's just a glaring error in the record. It's just, you know, right there. So so in closing, this case rests on credibility. Substantial evidence supports the agency's determination. Certainly, there's no there's no compelling reason to overturn it, even if it isn't perfect. There's no reasonable possibility that the agency would find this this person given everything in the record. Thank you very much. Thank you, sir. Unless the court has any questions. Apparently not. Yes. Thank you, Your Honor. Your Honor, the misdemeanor charge was ultimately dismissed. That's a separate proceeding. And it's not relevant to the merits of this appeal. As far as the the mention of the toy gun and how the petitioner was allegedly being evasive and not answering questions, while it's true that the petitioner referred to the weapon as a toy gun, no one, including the immigration judge, ever reminded him at any point that he should be using BB gun rather than toy gun. In fact, the immigration judge herself, as well as government's counsel, only used the terms toy gun and toy pistol and describing the weapon. And that's at record sites, 185, 1186, 1188 and 1294. The mentions of the police report. Sorry, I was muted. I made the classic Zoom mistake of trying to talk to myself. He was testifying in Spanish, no doubt, right? With a translator. That's right, Your Honor. I mean, is there any issue here about what was he actually saying in Spanish with respect to toy gun, BB gun, or is that just that? I was not there, but foreseeably, you know, that could definitely be an issue. There were issues during the trial because it seemed that the immigration judge was confusing the sisters at one point, Carla versus Clara. And so there were, you know, issues with him sort of understanding that. And there's always a time delay because they had to translate and wait for the translator to be okay. The petitioner, as far as the police report, the petitioner did not draft that report. But what it does is it helped corroborate his testimony that he was attacked on that day, that that attack did occur. And that that helps, you know, establish the fact that he was physically beaten on a certain day, and they went and reported that to the police. Now, did the police report include, you know, commentary about religious persecution? No, but there is a police report that exists that corroborates his testimony that he was physically beaten on a certain day. And as far as issues and inconsistencies in his timeline, there is case law that says that mistakes in minor issues are not dispositive of the case. For example, there's a case that holds that adverse decision principally relying on utterly trivial discrepancies and dates is remanded. And that is at ally June first holders 751 F 3d 1088 Ninth Circuit 2014. There's another case cadia versus Gonzalez, which is the Seventh Circuit case, which is false, the immigration judge for failing to distinguish between material lies, on one hand and in mistake, innocent mistakes, trivial inconsistencies and harmless exaggerations on the other hand, so the fact that the petitioner couldn't remember the last day that he attended high school, or the certain timeframe when one of his sister's games United States should not be dispositive of his asylum application, his case. And with that, Your Honor, unless you have any questions, that's all I wanted to address. Thank you. Thank you. Thank you. This case will be submitted and this panel will adjourn without me. Thank you very much. Thank you very much. Did we get telephone numbers to call in or I haven't got one.